```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

Susan Key Zielinski           :

      Plaintiff            : Civil Action No. 3:12-CV-1904

   v.                        :

Michael J. Astrue,            : (Judge Richard P. Conaboy)
Commissioner of
Social Security               :

---

## **MEMORANDUM**

By this Memorandum the Court addresses the claimant's request for a review of the Commissioner's final decision finding that she did not meet the Social Security Act's definition of disability from December 2, 2001, her alleged onset of disability date, to December 31, 2007, her date last insured.

The Plaintiff, who was born on January 12, 1954 and until 2001 worked as a licensed practical nurse in a prison setting, claims that she has a long history of back, neck and shoulder problems which have caused extensive pain and significant limitations to any work that she can do.  The Plaintiff alleged entitlement to Social Security Disability Benefits as a result of her lower back condition which both she and her doctors testified caused her extensive pain and severe limitations.  In addition, the Plaintiff and her doctors all testified that she suffered from neck and shoulder problems until she underwent surgery on February 18, 2005.

The decision of the Administrative Law Judge, which was

1

eventually approved and reaffirmed by the Commissioner, denied that the Plaintiff was eligible for Social Security Disability Benefits. The decision of the Administrative Law Judge essentially found that the claimant had the residual functional capacity to perform light work. The decision of the Administrative Law Judge was based largely on the Administrative Law Judge's view of the Plaintiff's disability as well as and very significantly on the credibility of the claimant's testimony regarding her disability.

For the reasons cited herein, we will reverse the decision of the Commissioner and award disability benefits to the claimant.

## I. Authority

In reviewing an appeal from a Commissioner's final decision in Social Security matters, various courts have outlined decisions which guide our thinking and there are many regulations that also guide and direct the thinking of the Court and the Administrative Law Judges.

For instance, a Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). A reviewing court is bound by the ALJ's findings of fact "if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence

2

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). The ALJ's findings of law, however, are subject to plenary review. *See Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990); *Podedworny v. Harris*, 745 F.2d 210, 221 n.8 (3d Cir. 1984).

Administrative law judges have the duty to develop a full and fair record in social security cases. *See Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Smith v. Harris*, 644 F.2d 985, 989 (3d Cir. 1981). Accordingly, an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits. *Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837, 841 (3d Cir. 1974). In *Hess*, the Circuit Court reasoned that "'although the burden is upon the claimant to prove her disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in the administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.'" *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) *(*quoting *Hess*, 497 F.2d at 840).

A hearing on a claim for social security benefits is not an adversarial proceeding and the ALJ must assist a claimant in establishing her claim. *Dobrowolsky v. Calilfano*, 606 F.2d 403,

3

406-07 (3d Cir. 1979).

Rulings addressing the residual functional capacity determination and the definition of light work are pertinent in this case. Social Security Ruling 96-8 provides a detailed method for determining Residual Functional Capacity (RFC). The ruling states what evidence is to be considered in the RFC determination:

> The RFC assessment must be based on all of the relevant evidence in the case record, such as:
>
> - Medical history,
> - Medical signs and laboratory findings,
> - The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication),
> - Reports of daily activities,
> - Lay evidence,
> - Recorded observations,
> - Medical source statements,
> - Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment,
> - Evidence from attempts to work,
> - Need for a structured living environment, and
> - Work evaluations, if available.

SSR 96-8. The ruling also provides narrative discussion requirements.

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily

4

> activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8.

Social Security Ruling 83-10 defines light work as follows:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs. A job also is in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> 'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be

5

> accomplished with occasional, rather than
> frequent, stooping. Many unskilled light
> jobs are performed primarily in one location,
> with the ability to stand being more critical
> than the ability to walk. They require use
> of arms and hands to grasp and to hold and
> turn objects, and they generally do not
> require use of the fingers for fine
> activities to the extent required in much
> sedentary work.

SSR 83-10 Glossary.

An ALJ must give an applicant's subjective complaints serious consideration and make specific findings of fact concerning his credibility. *See Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002). "Pain itself may constitute a disabling impairment." *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

Pain in itself may be a disabling condition. The Third Circuit Court of Appeals has stated that "even pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and is so intense as to be disabling will support a claim for disability benefits." *Taybron v. Harris*, 667 F.2d 412, 415 (3d Cir. 1981). When pain complaints are supported by medical evidence, they should be given great weight and where a claimant's testimony as to pain is reasonably supported by medical evidence, the administrative law judge may not discount claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir., 1985).

And finally, pertinent here, a treating doctor's opinions are

6

entitled to controlling weight, or at least substantial weight, pursuant to *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) citing 20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2).

## **II. Discussion**

In this case, the ALJ"s findings regarding Plaintiff's credibility are a key component of her decision. In pointing out the reasoning that she used in determining the Plaintiff's credibility the ALJ stated as follows:

> There are multiple factors which serve to discredit the claimant's allegations of disability before 2007. At the outset, the undersigned notes that in order to receive disability benefits under the Social Security Act, she must establish disability before 2007. The undersigned attempted to keep the claimant focused on her condition before 2007 as she tended to describe her current level of functioning. First and foremost, the claimant's receipt of early retirement benefits gave her little incentive to return to other work and this undermines her credibility with respect to her allegations of disability.
>
> Furthermore, the claimant admitted to extensive activities of daily living, and in her function report during the relevant time period a typical day would include making breakfast, lunch and dinner, she would also do light cleaning, fold laundry or do dishes. The claimant also watched her five-year-old grandson two times a week. The claimant would cook meals for her husband. She fed the family cat and she would occasionally feed the chickens. The claimant indicated she had no trouble with dressing, bathing, caring for her hair, shaving, feeding herself or using the bathroom and could do all of these activities unassisted. The claimant did not need any special reminders to take

7

care of personal needs and grooming or to take her medicine. The claimant noted she could walk outside, drive and ride in a car. The claimant was able to grocery shop. The claimant could pay bills, count change, handle a savings account and use a checkbook or money order. The claimant talked with her mother daily and visited with her husband. She visited with her mother once a month and went to football games. The fact that the claimant can do all of these activities and yet she alleged she cannot work undermines her credibility (Exhibit 3E).

The claimant was advised by Dr. Sheehe to stop smoking in July of 2001. Dr. John R. Tomedi saw the claimant on February 19, 2010 and it was noted the claimant suffered from tobacco use disorder, which indicated the claimant was still smoking almost ten years later. The fact that the claimant has gone against medical advice and her own best interest by continuing to smoke also undermines her credibility (Exhibit 1F, 15F).

Dr. Vahid Grami assessed the claimant's pain on January 19, 2011. He noted that the claimant's pain was present to such an extent as to be distracting to adequate performance of daily activities or work. He further opined, that physical activity such as walking, standing and bending greatly increases pain causing abandonment of tasks related to daily activities or work, and medication severely limits the claimant's effectiveness in the work place due to distraction, inattention and drowsiness. This opinion is given little weight because it is not an adequate residual functional capacity. This opinion is vague. Furthermore, this opinion was given in January of 2011, which is out of the relevant time period addressed in this decision. Based on the above the undersigned gives Dr. Grami's opinion little weight. (Exhibit 16F).

The claimant noted in her testimony that

8

> her treating physicians Dr. Kraynak and Dr.
> Tomedi instructed her to limit her bending,
> stooping, and twisting. She was to do no
> heavy lifting. Her doctors also told her not
> to sit for long periods. However, her
> doctors did not preclude her from all work.
> These opinions are not complete residual
> functional capacities and are vague.
> Furthermore, these opinions were expressed
> within testimony and it is difficult for the
> undersigned to know the exact specifications.
> However, both of these doctors treated the
> claimant over a period of time and as a
> result the undersigned gives some
> consideration to these opinions that were
> derived from the claimant's testimony
> (Exhibit 4F, 7F).

(R. 19-20.)

In reference to the findings of the ALJ regarding the claimant's residual functional capacity, the ALJ stated:

> The undersigned gives great weight to
> the State agency, which opined that the
> claimant is capable of light work, and can
> lift twenty pounds occasionally and ten
> pounds frequently. The claimant can walk and
> or stand six hours of an eight-hour workday
> and sit for six hours out of an eight-hour
> workday. Such an opinion is consistent with
> the overall medical record and the above
> residual functional capacity. Additional
> limitations have been added to the claimant's
> residual functional capacity based upon
> evidence that the claimant suffers from mild
> spondylolisthesis at the L4-L5 level,
> degenerative changes at L3-L4, L4-L5 and L5-S1
> and based on the claimant's own allegations
> (Exhibit 11F).

(R. 20.)

Contrary to the findings of the ALJ there is ample testimony in the record to demonstrate that while the ALJ talked about the

9

Plaintiff making breakfast, lunch and dinner, the Plaintiff stated that often times she could only make coffee or toast in the morning and that she could no longer make what she described as big meals. (R. 128-135.)

In regard to feeding cats and chickens, claimant testified that while at one point she had as many as thirty (30) chickens, her ability to take care of them diminished during the relevant time period and she was able to carry only coffee cans full of feed. (R. 74.)

While the ALJ made a finding that the Plaintiff could do light cleaning, folding laundry and doing the dishes, the claimant on the other hand testified very clearly that she had great difficulty doing these simple tasks and that while doing such simple tasks she required frequent breaks, many times requiring her to actually lie down for five to fifteen minutes at a time before she could return to the task. (R. 65, 70-71.) The Plaintiff further testified that this would happen five or six times on a good day and on a bad day it was "a series of stopping and starting." (R. 71.)

The ALJ indicated that the Plaintiff could walk outside while the Plaintiff testified she had to be very careful walking outside, her leg would give out on her and she fell a lot (R. 70, 73). The ALJ noted the Plaintiff's ability to drive and ride in a car but did not note that the Plaintiff testified that her riding in a car was extensively and gradually more and more limited (R. 66, 74), to

10

the point that at times she had to lie down on the backseat of the vehicle (R. 66).

The ALJ also indicated in her findings that the claimant had the capacity to go grocery shopping while the claimant actually testified that her shopping was gradually more and more limited because of her limited ability to walk and her falling often and that always when she would bring groceries home she would have to have her husband or a sister unloading and oftentimes even shopping for various groceries (R. 64, 72.).

In response to the ALJ's findings regarding these various activities which led the ALJ to determine that the Plaintiff could do light work, counsel for the Plaintiff pointed out "the Plaintiff attempts to do as much as she possibly can despite her severe impairments but the ALJ mischaracterized these as undermining her credibility." (Doc. 8 at 13.) That statement truly summarizes the condition of the claimant in this case. Together with the references made to the record herein, the statement capsulizes the problem with the ALJ's credibilty determination regarding the Plaintiff's activities of daily living.

Furthermore, the ALJ indicated that her decision on the claimant's credibility was "first and foremost" based on the fact that she was receiving a disability early retirement benefits from her previous job and therefore the claimant had little incentive to continue to return to other work. (R. 19.) While there is some

11

law that concludes that where a claimant's motivation for seeking disability benefits is evidenced by inconsistencies in the record related to that motivation, *see Gaddis v. Chater*, 76 F.3d 893, 895-96 (8th Cir. 1966), here nothing in this record shows such inconsistency. In fact, there is absolutely nothing in the record that indicates the claimant's testimony regarding her disability is any different now than it was before she received the retirement disability payments.

The ALJ in this case determined, as aforesaid, that the claimant was capable of doing light work with some restrictions and that she was not disabled under the Social Security Act because jobs existed in the national economy that she could perform. (R. 22.) However, the vocational expert upon whom the ALJ relied heavily testified that no jobs would be available if the claimant needed to take five or six breaks per day of varying times, maybe five minutes or more. (R. 78.) Here the claimant testified extensively that she had to take breaks five to six times a day on a good day and far more on other days even when doing the lightest type of work around her house. Thus, the problems identified with the ALJ's credibility determination directly affect her decision that the Plaintiff was not disabled and undermine any reliance the ALJ would have placed upon the vocational expert's opinion that jobs existed for the Plaintiff. This conclusion requires the Court to find that the ALJ's determination was not based on substantial

evidence.

To the contrary, the Court finds that substantial evidence in the record as a whole supports a finding that the Plaintiff is disabled and entitled to benefits. This is a case where the record is fully developed, the Plaintiff applied for benefits over four years ago, and we conclude it would be unreasonable to allow the ALJ another opportunity to more fully evaluate the evidence. *See Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Therefore, the case will be remanded to the Commissioner with instructions that benefits be awarded after a determination of the date of entitlement and the calculation of monies owed.

## IV. Conclusion

For the reasons discussed above, we conclude benefits are properly awarded to the Plaintiff. An appropriate Order is entered simultaneously with this Memorandum.

    S/Richard P. Conaboy
    RICHARD P. CONABOY
    United States District Judge

DATED: December 13, 2013